******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* EDUARDO SANTIAGO
(SC 17413)

The motion of the state of Connecticut, filed October 19, 2015, for stay of execution of the judgment of this court in *State* v. *Santiago*, 318 Conn. 1,      A.3d    (2015), pending the resolution of *State* v. *Peeler*, Docket No. SC 18125 (argued July 10, 2014), having been presented to the court, it is hereby ordered denied; a sentence of life imprisonment without the possibility of release shall be imposed forthwith.

October 30, 2015

PALMER, J. Following the release of our decision in *State* v. *Santiago*, 318 Conn. 1,      A.3d      (2015), in which a majority of this court concluded that the enactment of Public Acts 2012, No. 12-5 (P.A. 12-5), rendered the imposition of the death penalty on offenders sentenced prior to the passage of that act unconstitutional; and our denial of the state's motion for argument on October 7, 2015; see *State* v. *Santiago*, 319 Conn. 912,      A.3d      (2015) (order on state's motion for argument); the state filed a motion with this court, pursuant to Practice Book §§ 60-1, 60-2, 61-14, 66-2 and 66-3, to stay the execution of the judgment in this case pending the resolution of an appeal in a different capital felony case, namely, *State* v. *Peeler*, Docket No. SC 18125 (argued July 10, 2014), which appeal is currently before this court. Although it appears that a party could, under appropriate circumstances, move this court pursuant to those rules to stay the execution of a judgment, it would be improper for this court to grant such a stay when, as in the present case, the party that has not prevailed in an appeal before this court seeks the stay in the hope that the outcome of a different appeal—one filed later, by a different party, and that will be decided subsequently by a different panel of this court—may be more to its liking.[1] See Practice Book § 69-3; cf. *Roberts* v. *Cooper*, 61 U.S. (20 How.) 467, 481, 15 L. Ed. 969 (1858) ("there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions, or speculate of chances from changes in its members"). Accordingly, the state is not entitled to a stay in the present case.

We further note that the state, in both the present motion and its motion for argument, repeatedly has complained that the majority opinion in *State* v. *Santiago*, supra, 318 Conn. 1, was reached on the basis of issues that were raised sua sponte by the court, issues that the state contends it had no opportunity to brief or argue.[2] As we explained at some length in *State* v. *Santiago*, supra, 318 Conn. 120–26, this contention is

simply unfounded.

As the majority opinion in *Santiago* observed, the defendant indisputably raised and preserved "the claim that, following the enactment of P.A. 12-5, the death penalty now offends the state constitution in that it (1) fails to comport with contemporary standards of decency, and (2) is now devoid of any legitimate penological value. We recognized as much in our initial decision in [*Santiago*] . . . and, on reconsideration, the defendant dedicate[d] pages of discussion to this claim in his supplemental briefs. Indeed, his argument on reconsideration begins with the statement that '[P.A. 12-5] represents the considered judgment of our legislature and governor that the death penalty is no longer consistent with standards of decency in Connecticut and does not serve any valid penological objective.' " (Citation omitted; footnote omitted.) Id., 121. Later in his supplemental briefs, in connection with his discussion of the relevant *Geisler* factors,[3] the defendant expressly asked this court to again consider the concerns that have been raised in one-half dozen lengthy dissenting opinions of this court, written over the past several decades, that expressed the view that capital punishment offends the state constitution for a variety of reasons.[4] In his reply brief, the defendant discussed this state's failed historical experience with the death penalty and again argued that capital punishment no longer serves any legitimate penological purpose. That was more than sufficient to put the state on notice that the court was being asked to comprehensively reexamine the constitutionality of the death penalty, in light of recent developments.

More important, however, any suggestion that the state was not on notice that the issues discussed in the majority opinion in *Santiago* were before this court, or that the state was not afforded a fair opportunity to address them, is belied by the state's own submission in this case. See id., 126. In its supplemental brief, the state systematically reviewed the *Geisler* factors, explaining why, in its view, the Connecticut constitution provides no greater protection from cruel and unusual punishment than does its federal counterpart. See *State* v. *Santiago*, Conn. Supreme Court Records & Briefs, April Term, 2013, State's Supplemental Brief pp. 32–38. Specifically, the state argued that the death penalty continues to find support in (1) the text of the Connecticut constitution, (2) federal constitutional developments—despite the elimination of capital punishment for certain categories of offenders, (3) developments in sister states—despite the repeal of capital punishment in those states, (4) recent Connecticut precedents, including this court's lengthy discussion of the evolving standards of decency in *State* v. *Rizzo*, 303 Conn. 71, 31 A.3d 1094 (2011), and (5) various public policy considerations.[5] It is precisely on the basis of our disagreement with the state on each of these fundamental points of contention that a majority of this court concluded that capital punishment no longer passes constitutional

muster in Connecticut. Quite clearly, the state's analysis of the various *Geisler* factors refutes its contention that it lacked notice that this court would consider those factors in evaluating the defendant's claim. See *State* v. *Santiago*, supra, 318 Conn. 17–46 and n.14 (analyzing *Geisler* factors and explaining that those factors also are interwoven into our consideration of legal framework applicable to defendant's state constitutional claim).

In repeatedly arguing to the contrary, the state demonstrates its fundamental misunderstanding of this court's decision in *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 84 A.3d 840 (2014) (*Blumberg*). In *Blumberg*, we held that, "with respect to unpreserved issues that do not involve subject matter jurisdiction, plain error or constitutional error, if the reviewing court would have the discretion to review the issue if raised by a party because important considerations of justice outweigh the interest in enforcing procedural rules governing the preservation of claims and adversarial principles, the court may raise the *claim* sua sponte, as long as it provides an opportunity for all parties to be heard on the issue." (Emphasis added.) Id., 162. We also hastened to add, however, that, "when [a case] is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law  . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 148, quoting *United States National Bank* v. *Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 446, 113 S. Ct. 2173, 124 L. Ed. 2d 402 (1993). As we explained in *Santiago*, this is all the more so "when plenary consideration is necessary to thoroughly address and accurately decide constitutional claims and other matters of substantial public importance, our resolution of which will surely redound to the benefit or detriment of parties not presently before the court." *State* v. *Santiago*, supra, 318 Conn. 124.

It is this court's responsibility to construe the constitution of the state of Connecticut, and parties' briefs and arguments play an indispensable role in that process. It has never been the practice or policy of this court, however, to refuse to consider any factor or point or line of reasoning that may be relevant under *Geisler*, including relevant scholarship, sister state authority, historical context, undisputed or unchallenged facts, and legal argument and analysis, unless first fully vetted by the parties themselves. In other words, as long as the state constitutional claim is adequately briefed in accordance with *Geisler*, as it unarguably was in this case, it is this court's responsibility to identify and evaluate *all* of the relevant factors and considerations so that we may reach the correct constitutional result. For these reasons, the state's contentions in its motion for stay of execution are without merit.[6]

In this opinion NORCOTT, EVELEIGH and McDONALD, Js., concurred.

[1] On pages 4 and 5 of the state's motion for stay, for example, the state argues that it would be unfair for it to be bound by the decision of the *Santiago* panel if "a majority of the present (i.e., the *Peeler*) court concludes that it was wrongly decided . . . ."

[2] Among the purported "issues" that the state contends this court was precluded even from considering without first notifying the state thereof are basic facts that indisputably are matters of record, such as that the death penalty is rarely imposed in Connecticut, that offenders remain on death row for decades awaiting execution, that individuals sentenced to death in other jurisdictions have subsequently been exonerated, and that the trend among our sister states is in favor of abolition.

[3] In ascertaining the contours of the protections afforded under our state constitution, we utilize a multifactor approach that we first adopted in *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992). The six nonexclusive factors to be considered are (1) the text of the relevant constitutional provisions, (2) related Connecticut precedents, (3) persuasive federal precedents, (4) persuasive precedents of other state courts, (5) historical insights into the intent of the constitutional framers, and (6) contemporary understandings of applicable economic and sociological norms. See id.

[4] At no point did the defendant suggest that this court's review of the constitutionality of the death penalty should be limited exclusively to the theory that a new consensus had emerged in opposition to that punishment.

[5] In addition, the state dedicated no less than six pages to arguing that "Connecticut's standard[s] of decency [have] not evolved to the point that the death penalty has been rejected . . . ." *State* v. *Santiago*, Conn. Supreme Court Records & Briefs, April Term, 2013, State's Supplemental Brief p. 18. See generally id., pp. 18–23. The state spent six more pages contending that "[e]xecuting the defendant would not violate the Connecticut constitution's ban on cruel and unusual punishment . . . ." Id., p. 32. See generally id., pp. 32–38. In making those arguments, the state recognized that "[t]he defendant . . . presumes throughout much of his brief that Connecticut has made a moral decision that executing a guilty prisoner is no longer an acceptable form of punishment." Id., p. 18. In response to the defendant's claims, the state contended that neither the legislature, the governor, nor the people of Connecticut have come to see the death penalty as indecent. Id., pp. 18–23. It further argued that the death penalty continues to satisfy the legitimate penological objectives of deterrence and retribution, and that the continued imposition of the death penalty would not be impermissibly revengeful. See id., pp. 23, 29–31.

[6] We are baffled by the suggestion of Chief Justice Rogers, in her concurring opinion on this motion, that, in addressing the concerns that the state has raised in its various postjudgment motions in this case, we are somehow engaging in an "irregular," "eleventh hour attempt to justify the majority opinion [in *Santiago*] . . . ." In the majority opinion in *Santiago*, we responded at length to Chief Justice Rogers' contention that the constitutionality of the death penalty was not at issue in the case, notwithstanding that the defendant repeatedly had asked us to consider that very question and had briefed it at some length. Despite our explanation, the state, in the present motion, contends that it was denied the opportunity to address the questions decided in *Santiago*. There is nothing irregular or improper about us pointing out that the state not only was on notice, but did in fact spend more than one dozen pages briefing those issues. Indeed, we note that Chief Justice Rogers herself chose to write and publish an eight page dissenting opinion in response to the state's postappeal motion for argument in this case, in which she expounded at length on the arguments in her initial dissenting opinion in *Santiago*.